UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE REGISTERED HOLDERS OF ALTERNATIVE LOAN TRUST 2007-OA7, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA7,<br><br>Plaintiffs,<br><br>v.<br><br>THUNDER PROPERTIES, INC., A Nevada corporation; SUNRISE VILLAS CONDOMINIUM HOMEOWNERS ASSOCIATION, a Nevada non-profit corporation; E. ALAN TIRAS, ESQ., an individual and E. ALAN TIRAS, P.C., a Nevada Professional Corporation,<br><br>Defendants. | Case No. 3:16-cv-00097-MMD-WGC<br><br>ORDER |

**I.  SUMMARY**

This dispute arises from a non-judicial foreclosure sale of real property located at 1001 Baywood Dr., Unit A, Sparks, Nevada 89434, APN 036-372-23 ("Property") to satisfy a homeowners' association lien ("HOA Sale"). Cross-motions for summary judgment are currently pending before the Court. Plaintiff Bank of New York Mellon, F/K/A Bank Of New York, As Trustee, On Behalf Of The Registered Holders Of Alternative Loan Trust 2007-OA7, Mortgage Pass-Through Certificates Series 2007-OA7 (hereinafter "BONY" or "Plaintiff") seeks an order from this Court granting quiet title in its favor and holding that its first deed of trust was not extinguished by the HOA Sale and thus continues to encumber the Property. (ECF No. 69.) Defendant Sunrise Villas Condominiums Homeowners Association ("HOA") claims the deed of trust was extinguished by the HOA

///

Sale. (ECF No. 71.)[1] Defendant Thunder Properties, Inc. ("Thunder"), which purchased the Property at the HOA Sale, argues the same in its response to BONY's motion. (ECF No. 75.) The Court grants summary judgment for BONY because the Court concludes that valid tender of the superpriority lien amount preserved the first deed of trust. The Court therefore denies the HOA's motion (ECF No. 71).

## II. BACKGROUND

The following facts are undisputed unless otherwise noted.[2]

In December 2004, Danielle Moore ("Moore" or "Borrower") obtained the Property via a Grant, Bargain, Sale Deed. (ECF No. 70 at 5-6.) On January 5, 2007, Lender First Magnus Financial Corporation ("First Magnus") recorded a deed of trust ("DOT") in the Washoe County Recorder's Office, reflecting that Moore had borrowed a loan from First Magnus for $128,000.00 ("Loan"). (*Id.* at 8–9.) Borrower signed a note ("Note") secured by the DOT. (*Id.* at 8–10.)

Borrower failed to pay HOA assessments, and the HOA—through its agent E. Alan Tiras, Esq. ("Tiras") recorded a notice of delinquent assessment lien ("First Notice") in August 2012, showing unpaid assessments of $786.25. (*Id.* at 37.) Tiras recorded a notice of default and election to sell on September 24, 2012, providing that a subtotal of $1,188.75 was owed. (*Id.* at 40.) The HOA's ledger establishes that there was no assessment balance on September 24, 2012 after a "Balance Forward." (ECF No. 69-2 at 2.)

On November 19, 2012, Bank of America, N.A. ("BANA")—who is not disputed to have been the beneficiary of the DOT and servicer of the Loan at the time—through the

///

---

[1] In addition to the motions, the Court reviewed the respective responses (ECF Nos. 72, 74, 75) and replies (ECF Nos. 76, 77). The Court also considered BONY's supplemental authority and the HOA's response (ECF No. 81). The supplemental authority added nothing new to the Court's material considerations.

[2] The Court takes judicial notice of the exhibits provided in ECF Nos. 70 and 73 as they are matters in the public record. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (explaining that a court may take judicial notice of a government agency's records and other undisputed matters of public record under Fed. R. Evid. 201).

law firm Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer") requested that the HOA send it "the HOA arrears as they currently exists." (ECF No. 69-1.) On December 18, 2012, Miles Bauer sent the HOA another request for the same. (ECF No. 71-3.) On December 19, 2012, the HOA sent Miles Bauer a fax response with a ledger indicating $510.00 was owing as of December 16, 2012. (ECF No. 71-4.) On January 15, 2013, Miles Bauer sent a fax to the HOA asking for the "updated payoff statement through January 2013" and for "the HOA arrears as they currently exists." (ECF No. 71-5.) On January 24, 2013, the HOA responded to Miles Bauer with the following fax:

> The fees are due the first of each month; late fees of 10% are incurred when payment is not received prior to the 15th day of the month. The amount due and owing on the account is $921.60.
>
> . . .
>
> PLEASE NOTE: THE UNIT IS DELINQUENT AND COUNSEL HAS BEEN CONTACTED AND ASKED TO PREPARE A NOTICE OF DELINQUENT ASSESSMENT. THEREFORE, LEGAL FEES AND COSTS WILL BE INCURRED AND CHARGED BACK TO THE OWNER.

(ECF No. 71-7.) The HOA's ledger also shows that the amount of assessments due and owing as of February 1, 2013, was $921.60. (*Id.* at 3.)

On February 5, 2013, Tiras recorded a second notice of delinquent assessment lien ("Second Notice") with the Washoe County Recorder's Office, providing the unpaid total as $1,149.60. (ECF No. 1 at 55.) On February 8, 2013, Miles Bauer sent Tiras a letter and check for $921.60 as "full" payment. (ECF No. 71-8.) On February 14, 2013, the HOA sent a letter in response to the February 8 Miles Bauer letter and also returned the check. (ECF No. 71-9.) The HOA's letter provided that due to additional legal costs and fees the check was returned because the balance increased to $1,259.60. (*Id.*)

The HOA recorded a notice of default and election to sell on March 22, 2013, and a notice of foreclosure sale on July 1, 2013. (ECF No. 70 at 43; ECF No. 77-1.) The HOA Sale occurred on September 12, 2013, whereby Thunder purchased the Property for $4,012.22. (ECF No. 70 at 46–47.)

///

An assignment was recorded reflecting BONY's beneficial interest in the Property on November 21, 2013. (*Id.* at 34.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Moreover, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v.*

*Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted) (quoting William W. Schwarzer, *et al.*, The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 499 (Feb. 1992)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## IV. DISCUSSION

While the parties make various arguments, including constitutional and equitable contentions, the Court only addresses the parties' arguments regarding tender as the Court finds the issue is dispositive.

In several recent decisions, the Nevada Supreme Court effectively put to rest the issue of tender. For example, in *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113 (Nev. 2018) ("*SFR 1*") , *as amended on denial of reh'g* (Nov. 13, 2018), the Nevada Supreme Court held "[a] valid tender of payment operates to discharge a lien or cure a default." *Id.* at 117, 121. And it reaffirmed "that the superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. More recently, the Nevada Supreme Court held that an offer to pay the superpriority amount coupled with a rejection of that offer discharges the superpriority portion of the HOA's lien, even if no money changed hands. *See Bank of Am., N.A. v. Thomas Jessup, LLC Series VII ("Jessup")*, 435 P.3d 1217, 1218 (Nev. 2019). Even more recently, the Ninth Circuit weighed in to confirm the Nevada Supreme Court had settled this issue—"the holder of the first deed of trust can establish the superpriority of its interest by showing that its tender satisfied the superpriority portion of the HOA's lien," which "consists of nine months of unpaid HOA dues and any unpaid charges for maintenance and nuisance abatement." *Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 623 (9th Cir. 2019).

Here, there is no dispute that the check Miles Bauer sent to the HOA satisfied more than the superpriority amount of the HOA's lien on the Property. The parties, however, disagree as to whether BONY's payment constitutes valid tender. (*E.g.*, ECF No. 69 at 8–13, ECF No. 71 at 14–16, 22; ECF No. 76 at 3–7.) "In addition to payment in full, valid

5

tender must be unconditional, or with conditions on which the tendering party has a right to insist." *SFR 1*, 427 P.3d at 118 (concluding also that Bank of America had a right to insist on the condition that acceptance of its tender would satisfy the superpriority portion of the lien).

The HOA relevantly argues that Miles Bauer's February 8, 2013 payment to the HOA was (1) not for the Second Notice and no payment was paid as to that particular notice,[3] and (2) it rejected the payment in good faith. (ECF No. 71 at 12–16.) The Court rejects the first argument because irrespective of the relevant notice, it is undisputed that BANA's payment to the HOA satisfied the superpriority lien amount at the time.

The HOA otherwise contends that it rejected the payment in good faith based on its honest belief that the tender was insufficient to payoff the HOA's entire lien, the letter insisted on that payoff-condition in acceptance and as such amounts to a condition BANA had no right to insist on. (ECF No. 71 at 14–16, 22; ECF No. 76 at 3–7.) Thunder essentially concurs with the HOA's argument that the tender was impermissibly conditional—but also argues different reasons for this which the Court finds unpersuasive.[4] (ECF No. 75 at 10–17.) BONY counters, in gist, that tender was properly made and wrongfully rejected because the Miles Bauer letter included only conditions

///

---

[3]Thunder builds on this argument in its response to BONY's motion for summary judgment, contending that BONY's payment went to the First Notice. (ECF No. 75 at 10–15.) However, the payment was made against the HOA's balance after the Second Notice was issued. The Court therefore sees no reason to connect the payment solely to the First Notice, as opposed to a payment against the HOA's account balance. Thunder's other arguments that is discrete from the HOA's—that tender needed to be kept good or that Thunder's status as a bona fide purchaser quiets title in its favor—was rejected by the Nevada Supreme Court in *SFR I* (*id.* at 9–10, 15–16). *See SFR 1*, 427 P.3d at 121.

[4]Thunder specifically and distinctly argues that the payment was improperly conditioned on a trust account check being accepted, as opposed to a cashier's check. (ECF No. 75 at 16–17.) However, Thunder cites no authority to support that the distinction in check type renders the payment invalid or undermines Miles Bauer's readiness and ability to make the payment, or that the check-type amounted to a condition of payment. Thunder also argues that the letter accompanying the payment, *see infra*, could be read to absolve BONY of any future payments (*id.*). The Court does not agree with Thunder's reading of the letter in this regard. Thunder's other argument that neither BANA nor Miles Bauer did anything after the check was rejected appears to be connected to equitable considerations that the Court does not address here. (*See id.* at 17–18.)

BANA had a right to insist on and the HOA's good faith rejection argument is invalid. (*E.g.*, ECF No. 69 at 9–13; ECF No. 72 at 10–14; ECF No. 77 at 7–13.)

As an initial matter, to the extent the Court concludes that the payment amounts to valid tender, the Nevada Supreme Court has essentially foreclosed the HOA's good faith rejection argument in favor of the tendering—or merely offering—party. *See, e.g.*, *SFR 1*, 427 P.3d at 117 (citations omitted) ("A valid tender of payment operates to discharge a lien or cure a default."); *Jessup*, 435 P.3d at 1220 (concluding that a rejection of an offer does not prevent the offer from curing the default as to the superpriority portion of the lien for which the offer was made).

The relevant Miles Bauer letter provides:

Dear Sir/Madame:

As-you may recall, this firm represents the interests of Bank of America, N.A., as successor by merger to BAC' Home Loans Servicing, LP (hereinafter. '.'BANA") with regard to the issues set forth herein.. We have received correspondence from your firm regarding our inquiry into the HOA lien payoff demand for the above-referenced property. The Statement of Account provided by you in regards to the above-referenced address shows a full payoff amount of $921.60 through February 15, 2013. · · ' • .. · · · · · ·. .... . . ' ...

Our client wishes to protect its lien interest in the above-referenced property and has authorized us to make payment to you for the aforementioned full payoff amount of $921.60. <u>Thus, enclosed you will find a cashier's check made out to Sunrise Villas·Homeowners Association in the sum of $921.60</u>. Please note that any acceptance of said cashier's check on your part will be strictly construed as.an unconditional acceptance of the facts stated herein and express agreement that the HOA account regarding the real property located at l 00l Baywood Drive Unit A has now been "paid in full". We will expect the HOA to record a lien release (if applicable) and release any and all other legal notices previously recorded against the property related to this action, in addition to bringing this HOA account current within a reasonable time after cashing said cashier's check. Thank you for your prompt attention to this matter. If you have any questions or concerns, I may be reached by phone directly at (702) 942-0412.

(ECF No. 69-3 at 2 (emphasis in original).)

///

BONY contends this letter is substantively indistinguishable in its conditions from the letter the court in *SFR 1* found to only include permissible conditions. (*E.g.*, ECF No. 69 at 9–10.) The HOA argues that the conditions are different because the Miles Bauer letter here impermissibly insisted on the payment being accepted as satisfying the HOA's account in full—as opposed to solely the superpriority lien obligation—although additional legal costs and fees were incurred related to the Second Notice that were assessed against Borrower. (ECF No. 71 at 14–16, 22; ECF No. 74 at 18–20; ECF No. 76 at 3–7; ECF No. 71-8; ECF No. 71-9.) The HOA also contends that Miles Bauer could have paid the new balance provided in the Second Notice or taken some action to dispute any of the charges in the balance instead of taking no action after the HOA rejected payment. (*E.g.*, ECF No. 76 at 6.)

The Court finds the payment was a valid tender. A technical-uncontextualized reading of parts of the Miles Bauer letter may very well support the HOA's position. However, reading the letter in its entirety, the Court finds that the most reasonable conclusion derived therefrom is that BONY'S predecessor-in-interest intended to protect its interest in the Property by making payment to do so. Whether BANA/Miles Bauer was wrong about the $921.60 satisfying the HOA's full account balance up to February 15, 2013,[5] is secondary to the paramount intent of the payment—that it be accepted as full payment to, at minimum, protect the DOT. This is evident by the prefacing language in the letter, explaining that the letter was regarding BANA's interest in the Property and the express statement that "Our client wishes to protect its lien interest in the above referenced property." (*See* ECF No. 69-3.) Whether the amount was insufficient to cover the HOA's account balance is thus largely irrelevant to whether the payment effectively protected the DOT from the effect of the superpriority lien. To conclude otherwise would be to miss the forest for the trees.

///

---

[5] BONY insists in its briefing that not only was the superpriority amount paid, but the full lien amount due at the time was paid. (ECF Nos. 69, 72, 77.)

It is also unlikely that Miles Bauer would have any interest in paying anymore than it had paid because the $921.60 payment unquestionably protected its client's interest. To be clear, the superpriority lien amount consists of nine months of unpaid assessments, plus any charges for maintenance and nuisance abatement—which is not at issue here. *SFR 1*, 427 P.3d at 117. It does not include the additional fees and costs that the HOA contends Miles Bauer could have additionally paid. *See, e.g.*, *Horizons at Seven Hills v. Ikon Holdings*, 373 P.3d 66, 72 (Nev. 2016) ("*Ikon*") (finding that the superpriority portion of the HOA's lien under NRS § 116.3116 does not include collection fees and costs).[6] Such fees and costs did not concern BANA's interest in the Property at the time.[7] Accordingly, Miles Bauer had no reason to conclude that additional payments would further protect its client's interest to then endeavor to pay or even inquire into the additional amount.

The Court therefore concludes that the Miles Bauer payment constitutes valid tender that operated to preserve the DOT. Accordingly, the DOT continues to encumber

///

///

---

[6]The Court is unpersuaded by the HOA's lengthy explanation as to why the Court should find *Ikon*'s conclusion is flawed and thereby permit the additional costs and fees to be incorporated into the superpriority lien amount. (ECF No. 74 at 8–18.)

[7]The HOA attempts to contextualize the payment based on a letter Borrower sent the HOA. (ECF No. 71 at 14; ECF No. 71-6 (letter).) The letter was written on January 17, 2013—about 3 weeks before the Miles Bauer payment. (ECF No. 71-6 at 2.) It provides:

> I am writing to inform you of the status of my account . . .
>
> The property is currently in short sale status and a written offer has been made on the unit. The bank holding the first mortgage on the property has agreed to pay back the HOA dues on the unit at the close of sale. I would ask that you kindly be patient with foreclosure proceedings until the sale of the property.

Given this language, the Court cannot conclude the necessary meaning that the HOA would suppose the Court draw from the Borrowers letter—that the Miles Bauer payment, which came before the HOA Sale, was intended to satisfy the Borrower's full obligations to the HOA at that time as opposed to simply protect BANA's interest.

the Property. The Court thus grants summary judgment in favor of BONY and denies the HOA's request for the same.

## V.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that BONY's motion for summary judgment (ECF No. 69) is granted because the Court finds that valid tender preserved the DOT from being extinguished by the HOA Sale. BONY's other claims are denied as moot.

It is further ordered that the HOA's motion for summary judgment (ECF No. 71) is denied.

The Clerk is directed to enter judgment in favor of Plaintiff and close this case.

DATED THIS 26th day of August 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE